IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| EDMUND M. ABORDO, | ) | CIV. NO. 06-00423 SOM-LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DENYING MOTION FOR |
| vs. | ) | TEMPORARY RESTRAINING ORDER |
| | ) | AND DISMISSING COMPLAINT |
| DEPARTMENT OF PUBLIC SAFETY, | ) | PURSUANT TO 28 U.S.C. § 1915 |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER
AND DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. § 1915**

On August 4, 2006, *pro se* plaintiff Edmund M. Abordo filed this prisoner civil rights complaint pursuant to 42 U.S.C. § 1982 & § 1983. Abordo names Shari Kimoto, the Hawaii Department of Public Safety's ("DPS") Mainland Branch Contract Monitor, and Scott Jinbo, DPS Contract Monitor, in their individual and official capacities as defendants to this action (collectively "Defendants"). Abordo also filed an *ex parte* motion for a temporary restraining order ("TRO"). Abordo seeks injunctive relief only.

A hearing on the TRO was held on September 18, 2006. Deputy Attorney General John M. Cregor, Esq., and Thomas L. Read, Esq., appeared on behalf of Defendants. Abordo appeared by telephone. For the following reasons, the court denies the motion for a temporary restraining order and dismisses the Complaint pursuant to 28 U.S.C. § 1915 for failure to state a claim.

## BACKGROUND

On or about February 26, 2006, Abordo was transferred back to Hawaii from Tallahatchie County Correctional Facility ("TCCF"), located in Tutwiler, Mississippi, to the Halawa Correctional Facility ("HCF").  He alleges that Defendants violated his right of due process, his right of access to the courts, unspecified rights under 42 U.S.C. § 1982, and his rights under the Contract Clause, U.S. Const. art. I, § 10, when they allegedly ordered TCF prison personnel to confiscate his legal and personal property until Abordo paid the costs for shipping his property back to Hawaii.[1]

Abordo states that Defendants are "hell-bent" on destroying his property.  (Mot. for TRO 2.)  The property at issue consists of twelve boxes containing "legal books, Black's Law dictionary, Legal reference material, legal research material . . . [a] 13" color TV, Boom Box Stereo, Cass[ettes], X-Box with 15 games, a

---

[1] Abordo filed a similar action and motion for TRO on April 24, 2006. (*See Abordo v. Dep't of Public Safety, et al.*, Civ. No. 06-00226 HG-BMK.) In that action, Abordo gave significantly more detail regarding his transfer and the confiscation of his property, although the allegations in the two complaints and their claims for relief are the same. After a hearing was held in Civ. No. 06-00226 on Abordo's TRO, and Defendants agreed to preserve Abordo's property and transfer him back to Mississippi at the next possible date, Abordo voluntarily dismissed the action. (*See* Civ. No. 06-00226, Docket No. 8.) Unfortunately, Abordo developed a medical condition that temporarily prevented him from being safely transferred back to Mississippi. (*See* Civ. No. 06-00226, Docket No. 14, Letter from Thomas L. Read.)  On or about August 1, 2006, Abordo was medically cleared to travel. (*See* Read Decl. ¶¶ 5 & 6.)

2

typewriter, Yamaha PSR, [and a] 282 Keyboard." (Compl. 4.)
Abordo labeled all of his boxes "Legal Material."  (Defs.' "Ex.
B" att. to Defs.' Ex. B.)

In his "Request for Relief," Abordo seeks an injunction
requiring Defendants to either return him to Mississippi, by
September 19, 2006, "to retri[e]ve his property," or in the
alternative, an order requiring Defendants to pay the shipping
costs for his property's shipment to Hawaii, and granting him the
right to retain all of his property in his cell at HCF, as well
as allowing him cable television access and electrical outlets in
his cell.  (Compl. 7.)

In his TRO, Abordo seeks an injunction preventing Defendants
from destroying his legal materials and personal property and
transferring him to Mississippi on or before September 19, 2003.
(See TRO 3 ¶ 2 & Proposed Order.)  At the hearing, Abordo
clarified that he seeks a permanent transfer back to Mississippi,
regardless of whether this may prevent him from participating in
programs offered at HCF (but not in Mississippi) that could
hasten his release from prison.

## LEGAL STANDARD

A federal court must conduct a preliminary screening in any
case in which a prisoner seeks redress from a governmental entity
or officer or employee of a governmental entity.  28 U.S.C.

§ 1915A(a).  In its review, the court must identify any
cognizable claims and dismiss any claims that are frivolous,
malicious, fail to state a claim upon which relief may be
granted, or seek monetary relief from a defendant who is immune
from such relief.  *Id.*; 28 U.S.C. § 1915A(b)(1), (2).

The court must construe *pro se* pleadings liberally and
afford the *pro se* litigant the benefit of any doubt.  *Morrison v.
Hall*, 261 F.3d 896, 899 n.2 (9th Cir. 2001).  "'[A] complaint
should not be dismissed for failure to state a claim unless it
appears beyond doubt that the plaintiff can prove no set of facts
in support of his claim which would entitle him to relief.'"
*Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 558 (9th Cir. 1995)
(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  "Unless
it is absolutely clear that no amendment can cure the defect
. . . , a *pro se* litigant is entitled to notice of the
complaint's deficiencies and an opportunity to amend prior to
dismissal of the action."  *Lucas v. Dep't of Corr.*, 66 F.3d 245,
248 (9th Cir. 1995); *see also Lopez v. Smith*, 203 F.3d 1122, 1126
(9th Cir. 2000) (*en banc*).

## DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must
allege two essential elements: (1) that a right secured by the
Constitution or laws of the United States was violated; and

(2) that the alleged violation was committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Abordo alleges in Counts I and III that Defendants violated paragraph 15 of an agreement between TCCF and DPS governing the transfer of inmates and their property from an out-of-state facility to Hawaii, and that, in doing so, they violated (1) his right to due process guaranteed by the Fourteenth Amendment, (2) property rights guaranteed by the Contract Clause, and (3)unspecified rights under 42 U.S.C. § 1982.  In Count II, Abordo alleges that Defendants violated his right of access to the courts by refusing to ship his boxes, containing legal reference materials, free of charge.

I.    Abordo's Contract Claims are Dismissed.

Abordo's allegations in Counts I and III, that Defendants failed to abide by paragraph 15 of the TCCF/DPS agreement, are not cognizable under § 1983.  Paragraph 15 states in its entirety:

> 15.  Return of Inmates to the STATE. The CONTRACTOR shall, in accordance with the terms and conditions of this Agreement, return Inmates to the custody of the STATE at Honolulu International Airport or any other location determined by the STATE, together with the Inmates' personal property allowed by the STATE, all documents and records initially provided to the CONTRACTOR regarding the Inmates, except for facility operations and administrative files.  The CONTRACTOR will provide security guards and suitable handcuffs, leg and waist restraints

> > transporting the inmates from the CONTRACTOR
> > to the custody of the STATE.

(Defs.' Ex. E (emphasis added).)

First, this agreement is purely a matter of state contract law, the violation of which does not, without more, implicate or violate the Constitution or other federal law.  There has been no violation of the Contract Clause, which provides that "[n]o state shall . . . pass any . . . Law impairing the Obligation of Contracts."  U.S. Const. art. I, § 10, cl.1.  To prove a violation of this provision, a plaintiff must demonstrate that a "change in state law has 'operated as a substantial impairment of a contractual relationship.'"  *General Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978)).  In deciding whether such a demonstration has been made, the court asks whether "(1) a contract exists, (2) a change in law impairs that contract, and (3) the impairment is substantial."  *Linton v. Comm'r of Health & Environment*, 65 F.3d 508, 518 (6th Cir. 1995).  Abordo cites to no State law that abrogates or substantially impairs the provisions of the contract at issue here.  Moreover, the clear terms of the contract have not been violated, impaired, or changed in any manner.

Second, under the clear and specific terms of the contract, the State has the right to determine what personal property an inmate may bring back with him and what property is not allowed.

Finally, even assuming this court had jurisdiction over this claim, Abordo is not a party to the agreement between TCCF and DPS and has no standing to bring suit to enforce its provisions.

Abordo's allegations in Counts I and III regarding a breach of contract between TCCF and DPS fail to state a claim under § 1983 and are dismissed without leave to amend, pursuant to 28 U.S.C. § 1915.

II.  <u>Abordo's Discrimination Claims are Dismissed.</u>

Abordo also alleges in Count I that Defendants violated 42 U.S.C. § 1982 by requiring him to pay the costs of shipping his personal, disallowed property to Hawaii.  Abordo does not specifically allege discrimination in this claim, but appears to rely on § 1982's reference to property rights held by citizens of the United States.  Abordo has misinterpreted the protections afforded by § 1982, which states:

> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold and convey real and personal property.

To state a claim under § 1982, a plaintiff must demonstrate that (1) he is a member of a racial minority; (2) he applied for and was qualified to rent or purchase certain property or housing; (3) he was rejected; and (4) the housing or rental opportunity remained available thereafter.  *Phiffer v. Proud Parrot Motor Hotel, Inc.*, 648 F.2d 548, 551 (9th Cir. 1980);

*White v. Pacific Media Group, Inc.*, 322 F. Supp.2d 1101, 1111 (D. Haw. 2004); *see also West Coast Theater Corp. v. City of Portland,* 897 F.2d 1519, 1527 (9th Cir. 1990). Racial motivation is not an element of a § 1982 prima facie case; only a racial impact need be shown. *Phiffer*, 648 F.2d at 551 (citing *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413 (1968)).

Abordo does not allege that he is a member of a racial minority. Nor does he allege discrimination in the purchase or rental of the property at issue here. Abordo has thus failed to allege a prima facie case under § 1982.

Furthermore, if Abordo is attempting to raise a discrimination claim under § 1983, although this is not clear from the Complaint, he must at least so allege. As noted, Abordo does not even allege that he is a member of a protected class, or that Defendants treated him or his property differently from other similarly situated inmates.

Count I, whether brought under 42 U.S.C. § 1982 or § 1983, is dismissed for failure to state a claim, with leave granted to amend, if possible.

III. <u>Abordo's Due Process Claims are Dismissed.</u>

In Count I, Abordo also alleges that Defendants deprived him of his property and may destroy that property without due process in violation of the Fourteenth Amendment.

An authorized, intentional deprivation of a prisoner's property is actionable under the Due Process Clause. *See Hudson v. Palmer*, 468 U.S. 517, 532, n.13 (1984) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985). An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. *Logan*, 455 U.S. at 436; *Piatt v. McDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985); *see also Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987).

"To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)). Authorized deprivations of property are permissible, however, if they are carried out pursuant to a regulation that is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987). As the Supreme Court has stated, "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)(citations omitted). In other words, an inmate is not

necessarily accorded the same property rights, and the attendant due process, as an individual in the community.

The Complaint and the documents mentioned therein show that Abordo was given notice and an opportunity to be heard prior to the impending destruction of his property, through the prison administrative grievance process. *See Ausley v. Mitchell*, 748 F.2d 224, 225 (4th Cir. 1984) (under "straightforward application" of *Parratt v. Taylor*, 451 U.S. 527, 537, 543-44 (1981), no deprivation of property without due process where prison grievance remedy exists); *Phelps v. Anderson*, 700 F.2d 147, 149 (4th Cir. 1983) (same). Abordo asserts that he pursued the prison's administrative remedies to their conclusion regarding his claims.[2] (*See* Compl. 4 ¶ 5.) In his Reply, Abordo provides a copy of his Step III grievance appeal that shows that he refused to pay for the shipment of his disallowed personal property prior to his transfer.[3] (Reply Ex. B.) The grievance's response also states that Abordo "will be afforded a *final* 30 days notice to have the property sent out[,]" suggesting that he

---

[2] In their Opposition, Defendants argue that Abordo has not exhausted his administrative remedies. Abordo's exhibit, however, rebuts this claim.

[3]The court may take judicial notice of documents referred to in the Complaint. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (stating that courts may "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment.")

had received some previous thirty-day notice. (*Id.*) (emphasis added).

Although Abordo complains that there was no formal "hearing" before his property was confiscated, Abordo had, and resorted to, prison administrative remedies prior to any deprivation or destruction of his property. In fact, through this process, Abordo has successfully prevented his property from being destroyed. The court also notes that Abordo has filed two federal civil actions over the possible destruction of his property, and has had at least two opportunities to present his arguments at hearings, further indicating that he has been afforded the process he is due.

Courts have found that the requirements of due process are satisfied as long as prison authorities provide the inmate with the opportunity to dictate where to send the property. *See Searcy v. Simmons*, 299 F.3d 1220, 1229 (10th Cir. 2002); *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991). It is clear from Abordo's Step III grievance that he still retains ownership of his property, including his law-related or case-related materials and disallowed personal property, as prison authorities have not destroyed his boxes and have been awaiting instructions from him as to what to do with them. Further, Abordo has always retained the right to have his law-related or case-related materials shipped to Hawaii for free, and neither Defendants nor the State

11

of Hawaii has denied him this right.  Defendants, in fact,
informed Abordo four months ago that he could have his legal
documents and law-related or case-related materials shipped to
him at any time without charge.  (*See* Defs.' Ex. B, 10.)  Abordo
has also always had the ability to direct prison officials where
to send his personal property, although he is required to pay for
that shipping, because he has no free-standing constitutional
right to have his excess, disallowed, personal property shipped
to Hawaii for free.

Moreover, prison officials are free to institute rules and
policies limiting the number and type of law-related and personal
items an inmate may keep in his cell, to maintain institutional
security and safety.  *See Houghton v. Shafer*, 392 U.S. 639 (1968)
(holding that a prisoner is not entitled to maintain excessive
legal material in a cell); *see also Aldridge v. 4 John Does*, 2005
WL 2428761, *7 (W.D. Ky. Sept. 30, 2005) (prison officials may
restrict the accumulation of prisoners' personal property to
maintain security and prevent health and fire hazards); *Gay v.
Shannon*,  2005 WL 756731, *5 (E.D. Pa. Mar. 1, 2005) (prisoner is
not entitled to maintain excessive legal material in a cell);
*Hackett v. Horn*, 751 A.2d 272, 275 (Pa. Commw. Ct. 2000) (policy
limiting the number of boxes a prisoner may have in his cell is
rationally related to fire safety, contraband control, and
general prison order).

Abordo does not allege, nor can he, that the alleged illegal deprivation of his property was not justified by legitimate and established prison policies. *See Turner*, 482 U.S. at 89-90. This is the very type of decision that must be left to prison administrators and is precisely the situation discussed by the Supreme Court in *Bell v. Wolfish*, 441 U.S. 520, 547 (1979):

> [T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions.  Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

There must be an "intricate balancing of prison management concerns with prisoner's [due process rights] in determining the amount of process due." *Sandin v. Conner*, 515 U.S. 472, 478 (1995).

HCF's rule, that Abordo may not have a television, x-box and games, electric keyboard, boombox, or twelve boxes in his cell or stored at HCF, which, although not the primary focus of his Complaint, Abordo is also apparently protesting, is precisely the type of rule that requires deference from this court.  Abordo's claims relating to any putative right he believes he has to have his personal property shipped for free, or maintained in his cell at HCF, or kept in his cell once he is transferred back to

13

Mississippi, are therefore dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915, without leave to amend.

Abordo admits in his Complaint that he had recourse through the prison administrative grievance process to protest the prison's refusal to ship his disallowed property for free, and that he utilized that process.[4]  On the face of the Complaint, it is clear that Abordo was given all the process he was due.  He fails to state a claim for a due process violation.  Pursuant to U.S.C. § 1915, the due process claim is dismissed, as are any claims he asserts regarding his putative right to keep personal property in his cell, with leave granted to amend.

IV.  Abordo Has No Right to Be Housed at the Prison of His Choice.

At the hearing, Abordo clarified his claim for relief by explicitly stating that he seeks a permanent transfer to Mississippi to serve his maximum prison term.  Defendants stated

---

[4]Defendants supply documents showing that Abordo was informed prior to his transfer which items he was allowed to bring to Hawaii, including his religious and legal materials, and which items he was required to pay to have shipped.  (*See* Defs.' "Ex. A" att. to Defs.' Ex. B.) Despite this notification, in packing the twelve boxes, Abordo mixed his legal materials with his disallowed personal materials.  He then labeled all of the boxes as "legal material" in the hope that they would be sent to him free of charge.  Abordo signed a receipt for his twelve boxes, noting that he refused to pay for their shipment.  (*See* Defs.' "Ex. B" att. to  Defs.' Ex. B.)  Although the court does not consider these documents in dismissing this claim pursuant to § 1915, they contradict Abordo's claims that he was denied due process.  If Abordo amends his Complaint, he should not overlook this circumstance.

that they were willing to send Abordo back to Mississippi and said that they had scheduled his transfer for the end of September 2006.  On September 28, 2006, Defendants notified the court that Abordo had been transferred to Mississippi on September 26, 2006.  (*See* Cregor letter, Docket No. 15, dated September 28, 2006.)  Abordo's claim for a transfer is, therefore, moot; Abordo has received the relief he seeks.  The court, however, notes that Abordo has no *right* to be transferred back to Mississippi, and he may not use his transfer as precedent to support any future actions or claims to that alleged right.

A prisoner has no constitutional right to be housed at a particular institution within the state, *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Neal v. Shimoda*, 131 F.3d 818, 828 (9th Cir. 1997), or to be housed in any particular state, *Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983).  Nor do Hawaii's laws or statutes support a state-created liberty interest to be housed at or transferred to the institution of the inmate's choice.  *Neal v. Shimoda*, 905 F. Supp. 813, 818 (D. Haw. 1995), *rev'd in part on other grounds*, 131 F.3d 818 (9th Cir. 1997).  Thus, despite Defendants' willingness to transfer Abordo back to Mississippi, he does not have the right to dictate that transfer, or to demand that he be transferred back to Hawaii at a later date.  Any claims or requests for relief that Abordo has, premised on this putative right, are also dismissed.

15

IV.  <u>Count II is Dismissed for Lack of Standing.</u>

In Count II, Abordo claims that Defendants, by refusing to ship free-of-charge his boxes containing both his disallowed personal property and his legal materials, denied him access to the state court.

Inmates have a fundamental constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996).  The right is limited to direct criminal appeals, habeas petitions, and civil rights actions. *Id.* at 354.  Claims for the denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (a forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (a backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 412-15 (2002).  To state a claim based on the denial of access to the courts, a plaintiff must allege facts demonstrating that he suffered an actual injury by being shut out of court. *Id.* at 415; *Lewis*, 518 U.S. at 351.  In other words, a claim for deprivation of the constitutional right of access to the courts must allege both the underlying cause of action, whether that action was merely anticipated or already lost, and the official acts that frustrated the litigation. *Harbury*, 536 U.S. at 415-16.

While the Constitution protects plaintiff from being denied access to the courts, a right of access claim accrues only when

16

and if a plaintiff suffers an actual injury with respect to a direct criminal appeal, or a nonfrivolous habeas petition or civil rights suit. *Harbury*, 536 U.S. at 415; *Lewis*, 518 U.S. at 351, 354.

Abordo alleges that he "has current litigation in state court[,]" and that he "cannot answer the State's Reply or file a traverse in support of his Petition, because he has no access to his legal materials and pleadings which [are] in Mississippi." (Compl. 5 ¶ 3.) Abordo claims that he "will lose the only opportunity to vacate his sentence as a bar to future challenges." (Compl. 5 ¶ 4.) In his Reply, Abordo says again that he "has currently an action still pending in State Court regarding his illegal extended term sentence" and has no access to his legal materials "to effectively litigate issues presented for rebutt[al]." (Reply 4.) At the hearing on his TRO, Abordo reiterated that he had a pending post-conviction petition in the state court, which he described as being in "limbo" since last summer.

First, Defendants have not withheld Abordo's legal materials from him. He packed his legal materials in the same boxes as his disallowed personal property, and there they have remained. Defendants informed Abordo four months ago that he could have his legal materials at any time, upon his authorization allowing them to separate his legal materials from his personal property. (*See*

17

Defs.' Ex. B, 10 (stating that Defendants "will provide Plaintiff with his legal materials and any specified items set forth in Exhibit 'A' to the Declaration of Howard Komori."))  He has refused to do so.

Second, taking judicial notice of the State of Hawaii's court records, which are public, this court notes that, in fact, Abordo does not have any pending litigation in the state courts.[5] *See* http://hoohiki2.courts.state.hi.us/jud/Hoohiki/main.htm. These records show that Abordo has filed four post-conviction petitions in the state court; his most recent, *Abordo v. State*, S.C. No. 27436, was filed on June 21, 2005, and dismissed by the Hawaii Supreme Court on March 22, 2006.  *See* http://www.courts.state.hi.us/page_server/Legal; *Abordo v. State*, S.C. No. 27436, Hawaii Supreme Court Docket.

These records also show that there has been no denial of access to the courts or actual injury to this litigation that can be attributed to Defendants.  Abordo was still incarcerated in Mississippi when he filed his petition on June 21, 2005.  When

---

[5]The court may take judicial notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). Judicial notice may be taken of court records. *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635 n. 1 (N.D. Cal. 1978), *aff'd*, 645 F.2d 699 (9th Cir. 1978); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980).

Abordo filed his notice of appeal, on August 10, 2005, the state court informed him that he had to file an opening brief and a statement of jurisdiction.  Abordo did not do so.  On December 16, 2005, the Hawaii Supreme Court sent a letter notifying Abordo of his failure to file an opening brief and statement of jurisdiction.  Because he did not respond or comply, on January 18, 2006, the Hawaii Supreme Court entered an order directing Abordo to file his opening brief and statement of jurisdiction within thirty days.  *See Abordo v. State*, S.C. No. 27436, Order entered Jan. 18, 2006 ("January 18 Order").  The January 18 Order notified Abordo that failure to file would result in dismissal of his action.  When the January 18 Order and the earlier notices were sent, Abordo was still in Mississippi at his address of record in the state case.  There is nothing in the records this court has viewed saying that the January 18 Order or earlier notices were returned to the state court as undeliverable. Abordo was transferred to Hawaii thirty-nine days later, on February 26, 2006.  He has still never notified the state court of his change of address.

On March 22, 2006, three months after entering the January 18 Order, and one month after Abordo's transfer to Hawaii, the Supreme Court dismissed Abordo's appeal for failure to comply and for default with respect to the unfiled statement of jurisdiction and opening brief.  *See Abordo v. State*, S.C. No. 27436, Order

19

Dismissing Appeal, entered March 22, 2006 ("March 22 Order").  On April 3, 2006, the March 22 Order was returned to the Hawaii Supreme Court, with a notation, "No longer at facility."  *Id.* Abordo may be unaware that his state court action has been dismissed because he failed to notify the court of his change of address.  However, he was certainly aware before he left Mississippi that he was required to file an opening brief in his appeal and a statement of jurisdiction.

Additionally, despite Abordo's claim that he is unable to "answer the State's Reply or file a traverse in support of his Petition," (Compl. 5 ¶ 3.), the public documents in this action show that, on November 11, 2005, more than three months before Abordo was transferred to Hawaii, the State informed the court that it would *not* file an answering brief because the State was never served with the petition.  Abordo had no need to file a "Reply" or "traverse" to any State pleading because he had not yet filed or served his opening brief, and there was no Answer to rebut.

As the record shows that Abordo had no actual injury to pending litigation attributable to any Defendant's official act, Count II is dismissed.  Abordo may, however, file an amended Complaint.  *Harbury*, 536 U.S. at 415-16.

IV.    Abordo's Motion for Temporary Restraining Order is Denied

Abordo seeks a temporary restraining order to prevent what he claims is imminent destruction of his personal property. He also seeks an injunction requiring the Defendants to transfer him back to Mississippi permanently. He has now been transferred back to Mississippi, and his property has not been destroyed. His request for a TRO is moot and is DENIED on that ground.

**CONCLUSION**

1. Abordo's Motion for a Temporary Restraining Order is DENIED.

2. Abordo's Complaint is DISMISSED for FAILURE TO STATE A CLAIM, pursuant to 28 U.S.C. § 1915A(b)(1) & § 1915(e)(2)(B), as follows:

a. Abordo's claims relating to an alleged breach of contract, are DISMISSED with prejudice. Amendment to these claims is futile, and this dismissal of a portion of Count I and all of Count III is without leave to amend.

b. The portion of Count I relating to Abordo's putative right to free shipment of his disallowed personal property, or to his supposed right to maintain personal property in his cell, is DISMISSED. As amendment to this claim is futile, this dismissal is without leave to amend.

21

c.   The portion of Count I relating to discrimination under 42 U.S.C § 1982 and § 1983 is DISMISSED with leave to amend, if possible.

d.   The portion of Count I alleging a due process violation is DISMISSED with leave to amend, if possible.

e.   Count II, alleging a denial of access to the court, is DISMISSED with leave to amend, if possible.

3.   Abordo is granted **thirty [30] days from the date of this order, (i.e., until October 28, 2006)** to amend his Complaint in accordance with the directions of this Order.  Failure to adequately amend the Complaint within thirty days will result in AUTOMATIC DISMISSAL of this action with prejudice for failure to state a claim.  **This dismissal shall count as a strike pursuant to 28 U.S.C. § 1915(g).**[6]

4. The Clerk is DIRECTED to send Abordo a prisoner civil rights complaint form so that he may amend his Complaint.  If

---

[6]Although Abordo failed to list all of his federal actions in his Complaint, as required, court records reveal that he has filed at least eighteen actions in the federal courts since 1994. *See* U.S. Party/Case Index, PACER Service Center, http://pacer.psc.uscourts.gov.  At least two of Abordo's prior actions were dismissed as frivolous or for failure to state a claim.  *See, e.g.*, *Abordo v. Beaver, et al.*, Civ. No. 97-01099 (D. Haw. 1997) (dismissed for failure to state a claim); *Abordo v. Beaver*, Civ. No. 00-00002 (D. Haw. 2000) (dismissed as barred by doctrine of *res judicata*) (*see Franklin v. Murphy*, 745 F.2d 1221, 1230 (9th Cir. 1984) (action barred by *res judicata* can be dismissed as frivolous under 28 U.S.C. § 1915).  Thus, a final dismissal of this action will constitute a third strike for purposes of 28 U.S.C. § 1915(g).

Abordo decides to amend the Complaint in accordance with this order, the amended complaint must "reproduce the entire pleading as amended and may not incorporate any part of a prior pleading by reference."  Local Rule LR10.3.  The document must bear the docket number assigned this case and must be clearly labeled "Amended Complaint."

5.    The Clerk is further DIRECTED to send a copy of this Order to Abordo at the Tallahatchie County Correctional Facility, located at 295 U.S. Hwy., 49 South, Tutwiler, Mississippi 38963, to Defendants' attorney, Deputy Attorney General John M. Cregor, located at 425 Queen St., Honolulu, Hawaii, 96813, and to the Department of Public Safety's representative, Thomas Read, located at 919 Ala Moana Blvd., 4th Floor, Honolulu, Hawaii, 96814.

        IT IS SO ORDERED.

        DATED: Honolulu, Hawaii; September 28, 2006.



_____
Susan Oki Mollway
United States District Judge

Abordo v. KIMOTO, et al., CV 06-00423 SOM-LEK; ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND DISMISSING COMPLAINT; dmp/ screening orders/Abordo 06-423 #2 (TRO & C)